## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1.) WILLIAM SEAN BUCKNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.    22-CV-146-JAR** |
| | ) | |
| **(1.) CITY OF SALLISAW OKLAHOMA,** | ) | |
| **(2.) Lt. HOUSTON MURRAY, Individually,** | ) | |
| **and in his Official Capacity,** | ) | **JURY TRIAL DEMANDED** |
| **(3.) CHIEF OF POLICE,** | ) | |
| **TERRY FRANKLIN, Individually, and** | ) | |
| **in his Official Capacity,** | ) | **FINAL** |
| | ) | |
| **Defendants.** | ) | |

## <u>VERIFIED COMPLAINT</u>

The Plaintiff, by and through CONRADY LAW, PLLC by the undersigned attorney, James A. Conrady, and for his causes of action against Defendants alleges and states as follow:

### INTRODUCTION

1.      Plaintiff under Federal Question Jurisdiction seeks compensatory damages and punitive damages for discrimination, the deprivation of civil rights, and for the failure to properly train and supervise.   Under Supplemental Jurisdiction, Plaintiff under all Common Law and Oklahoma State Laws, seeks compensatory damages for unlawful detention without probable cause, false arrest, use of excessive force causing injury to his person,  emotional distress, damage to reputation and punitive damages.

**JURISDICTION AND VENUE**

2.      This Court has federal question jurisdiction under 42 U.S.C. § 1981,  42 U.S.C. § 1983, the Fourteenth Amendment to the U.S. Constitution, under 28 U.S.C. § 1331, and under Rule 57 (Declaratory Judgment) and Rule 65 (Injunctions and Restraining Orders) of the Federal Rules of Civil Procedures. This Court has Supplemental Jurisdiction over the Common Law Claims  as well as applicable State Law Claims, specifically under the Oklahoma Governmental Tort Claims Act (OGTCA), all pursuant to 28 U.S.C. § 1367 in that all of the  claims in the action within such original jurisdiction, form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is appropriate in this Court as the Plaintiff lives in Sallisaw, Sequoyah County, Oklahoma, which is located in the Eastern District of Oklahoma, and the actions that are at issue in this lawsuit took place in the Eastern District of Oklahoma.                                                  **PARTIES**

4.      Plaintiff is a Native American and Member of the Cherokee Nation, and is a resident of Sallisaw, Sequoyah County, Oklahoma.

5.      Defendant City of Sallisaw, Oklahoma is a political subdivision located in Sequoyah County, Oklahoma.

6.      Defendant, Lt Houston Murray is an employee of the Sallisaw, Oklahoma Police Department, Sequoyah County, Oklahoma.

7.      Defendant, Terry Franklin, is the Chief of Police in the  Sallisaw, Oklahoma Police Department, Sequoyah County, Oklahoma.

## FACTUAL ALLEGATIONS

**Plaintiff's Narrative Description of Events:**

8.      On October 23, 2021, on or about 6:25 pm, My wife and I were traveling east bound on Hwy 64, in Sallisaw Oklahoma, near Scotts Furniture store at a rate of 25 MPH, and consistent with the flow of traffic.

9.      About 300 Feet in front of my vehicle, Traveling west bound was a City of Sallisaw police SUV, Black in color, traveling at approximately 30 mph, also consistent with traffic in the lanes headed west bound. I noticed that the police SUV turned on his lights without sirens and started to accelerate while It passed me traveling west bound on Hwy 64.

10.     Noticing in my side mirror, that he had traveled approximately 200 yards past my vehicle and the SUV made a swift and sudden U-turn, into traffic headed east bound.

11.     I then witnessed the same SUV Accelerate, pass a car behind my vehicle then, swerved in behind my vehicle.

12.     I immediately exited Hwy 64 into the Motel 6 west end parking lot. The Police Officer followed into the parking lot of motel 6 and parked directly behind my vehicle with his lights flashing.

13.     The Officer took a few moments before he exited his vehicle and approached my vehicle from the driver's side. I then rolled down my window and the Officer uniform identified him as Lieutenant Murray. Lt. Murray informed me that the

reason for the traffic stop was my vehicle had burned out head lamp. I believed that the

headlamps were in working order as I had checked them just a few days prior so I exited

my vehicle and walked to the front and observed that the lights were on high beam.

14.    Within a few seconds my wife, Stephanie Buckner, sitting in the passenger

seat reached over and changed the lights to low beam and BOTH headlamps were

operating at the required 300 plus lumens that Oklahoma State law requires. I

immediately informed Lt Murray that the headlamps were operational and that the issue

had been fixed by lowering the headlamps to low beam as I was un aware that the high

beams were on, because it was still daylight outside at 6:30pm.

15.    Lt Murray responses were that he didn't care and that his camera on his

SUV can prove otherwise.

16.    Official sunset was  6:45pm whilst Oklahoma Law requires headlamp to

be in use no earlier than 30 minutes AFTER sunset This would have required my

vehicle to have operational low beam headlamps at 7:15pm.

17.    At time of contact, both headlamps were fully operational at low beam.

18.    I then immediately returned to my vehicle and closed the door. I asked him

if he was going to write a citation and he informed me that because of my attitude he

was going to give me a warning, but is now going to write a citation. I argued that both

headlamps were in working order and he didn't care.

19.    Lt Murray then asked for driver's license, registration, and proof of

insurance. I was able to immediately provide registration and driver's license. I did not

have the security verification in paper form, and at that time my wife was logging into our Geico account to provide the digital form of security verification.

20.    At approximately 6:43pm  Lt Murray returned to his vehicle with my driver's license and registration. During his absence , my wife was able to acquire the digital security verification form he requested.

21.    On or about 6:45pm Lt Murray returned to my divers window with my registration and what appeared to be a citation. At this exact time, I presented the digital form of the security verification. Lt Murray response was that it was too late and that he was issuing a citation for no proof of insurance and defective headlamps.

22.    As he presented the citation to me, a vehicle with open exhaust's and no farther than 150 yards, proceeded to do the longest burn out that I have ever witnessed. During this exact time, and simultaneously with the burn out, Lt Murray was trying to communicate with me. I physically could not hear a word he was saying over the muscle car doing a burn out. I then cupped my hand to my left ear and communicated to him with a yelling voice, " I cannot hear you". Lt Murray continued to move his lips trying to talk louder than the vehicle doing the burn out. I repeatedly communicated to Lt Murray that I could hear a word he was saying.

23.    Lt Murray demeanor changed drastically during the attempt to communicate over the vehicle doing the burn out. After the noise of vehicle doing the burn out resided, Lt Murray asked a simple question, "are you going to sign this citation?"

24.    My response was No, I am not going to sign and before I could finish my sentence of, "before I read it".  I then told him three (3) times that I would sign it.   Lt Murray backed up from my driver's  window 5 or 6 steps, placed his hand on his gun, and ordered me to get out of the vehicle and that he was placing me under arrest.

25.    I then communicated to him that if he was going to arrest me, then I would sign the citation. His response was too late, you're going to jail. I immediately turned around and placed my hands directly behind my back. He placed his handcuffs on my left hand first, and then my right. In doing so, the cuffs were extremely tight, that it hurt severely and I yelled, "Ouch, you're hurting me".

26.    Lt Murray then Screamed in my ear "Stop resisting" over and over. I was not resisting, I flinched because of the severe pain on my wrist.  At this time, Lt Murray told my wife and I that he was going to impound my vehicle that was parked on motel 6's property.

27.    I pleaded with him not to do this as it would force my wife to walk home that was 4 miles away. I told him that my wife could drive my vehicle home. His response was that he didn't care and he was going to impound it. Immediately after his threats of impounding my vehicle, he placed me in the backseat of his SUV.

28.    After about 5 minutes, Lt Murray returned to his vehicle and started to transport me to the city police department. During this trip, I demanded he charges me with every violation he threatened I did, including but not limited to resisting arrest. I also demanded that he impound my vehicle like he threatened to do and force my wife walk home.

29.    I was apprehended, placed under arrest, booked into jail for not signing a ticket that was for broken headlamps that was in working order and clearly shown to officer that they were working, and not having insurance on a vehicle that was clearly insured and verified with digital forms.

30.    I believe the officer did not have probable cause for contact or an arrest because it was still daylight and the state required time to operate a vehicle with headlamps had not been achieved which was 7:15pm.

31.    I feel that the behavior of this officer, especially as a Lieutenant of the Sallisaw Police department was unbecoming of an officer. He is extremely reckless in how he maneuvered his vehicle to make contact. He clearly put more people in danger of himself, than myself driving with a burnt high beam while driving in daylight hours.

32.    Before my arrest he escalated the tensions at every point, including but not limited to, threatening multiple times to impounding my vehicle and making my wife walk home My vehicle was parked on private property while my wife was capable, and fully licensed to drive.

33.    Lt. Murray then placed handcuffs on my wrist so tight that it pealed skin off forcing me to flinch so he could yell Stop resisting arrest  and place a charge of resisting arrest, which is documented with photographs at the jail intake by officer Nick.

34.    I was arrested and was taken to the Sallisaw police department,  jailed until upon posting Bond was released.

35.    At some point during the presentation of the citation, Lt Murray asked me if I was Native American, which is highly offence to me as I belong to the Cherokee

Nation, in which he had my driver's license, he ran my Cherokee License plates in his computer, and confirmed the vehicle was registered to me, with Cherokee Tags. I understood this to be a highly offense remark and that his actions was based on the fact that I belong to the Cherokee Tribe.

36.   At the booking desk at the Sallisaw Police Station, a third party asked why the Plaintiff was arrested and Lt. Murray stated: *"Because I can."*

37.   After my arrest and bonding out if jail, I have never received any traffic citation or notice to appear in any Municipal, District or Cherokee Nation Tribal Court.

38.   As a result of this experience, I am physically terrified to travel in the city limits at this point because this officer clearly disregards city and state regulations and laws creates false narratives to charge people with crimes.

**Historical Factual Allegations Obtained by Freedom Of Information Requests:**

39.   Lt. Murray has a history of similar misconduct, mistreatment of Citizens and failures to follow even elementary policies and procedures of the Sallisaw Police Department.

40.   Lt. Murray has over a period of years abused his authroity and harrassed another individual to protect him from retaliation is identified as *"John Doe."*

41.   Lt. Murray has been he subject of Sallisaw Police Department internal investigations which led to:

a.   Internal Reports of conduct unbecoming an officer.

b.   Demotion of Murray for misconduct.

42.    Police Chief, Terry Franklin has not adequately trained or supervised Lt. Murray which contributes to Lt. Murray's continued abuse and misconduct to the detriment of the Citizens of Sallisaw, Sequoyah County Oklahoma.

43.    Despite multiple complaints and documented misconduct, Lt. Murray still is able to terrorize and abuse the citizens of Sallisaw, Sequoyah County Oklahoma.

44.    As a result of Defendants' actions and/or inactions, Plaintiff has suffered actual and compensatory damages for which exemplery damages should be assessed.

## FIRST CAUSE OF ACTION
## DISCRIMINATION AGAINST A NATIVE AMERICAN
### [42 U.S.C. § 1981]

45.    Section 1981 protects whites and nonwhites from discrimination due to ....race and national origin.

46.    The Plaintiff claims disparate treatment by Lt. Murray for the reason that he has a automobile tag issued by the CHEROKEE NATION and because of his tribal membership in the Cherokee Nation.

47.    The Plaintiff seeks nominal and  compensatory damages, and punitive damages for which there is no cap.

## SECOND CAUSE OF ACTION FOR
## DEPRIVATION OF CIVIL RIGHTS, AND CLAIMS FOR
## COMPENSATORY DAMAGES AND PUNITIVE DAMAGES
### [42 U.S.C. § 1983 and The Fourteenth Amendment]

48.    The Plaintiff has a Constitutionally protected Right to Equal Protection under the Law.

49.     Lt. Murray was acting under the **"Color of Law"**.

50.     The Plaintiff has suffered a denial of his civil rights due to the events described above in paragraphs numbered 8 through 38.  The Plaintiff's civil rights were infringed upon and denied due to:

a.     Lack of probable cause.

b.     Unlawful Detention.

c.     False Arrest without legal authority.

d.     Use of Excessive Force.

e.     Injury to his person.

**COMPENSATORY DAMAGES:**

51.     Plaintiff suffered compensatory damages including, but not limited to, injury to his person, emotional damages, humiliation, loss of respect in  the community and and mental distress.

52.     Plaintiff is entitled to recover $125,000 in statutory damages under the Oklahoma Governmental Tort Claims Act.

**PUNITIVE DAMAGES:**

53.     Defendants combined actions and omissions are so egregious as to warrant an award of punitive damages to deter similar conduct in the future.  An award of punitive damages is appropriate to deter future similar conduct by all of the Defendants.

54.     The Plaintiff is entitled to an award of  reasonable attorney's fees and costs against all Defendants.

## THIRD CAUSE OF ACTION
## FAILURE TO TRAIN AND SUPERVISE
*[42 U.S.C. § 1983, Declaratory Judgment & Injunctive Relief]*

55.    The Plaintiff seeks Declaratory Judgment finding that the Sallisaw Police Department and Chief Terry Franklin do not have in place adequate training and supervision of officers nor does Chief Franklin adequately trail and supervise officers under his command.

56.    Plaintiff seeks a proactive Injunction requiring Chief Franklin and the Sallisaw Police Department to:

a.    Review and revise training subjects and training methods.

b.    Review historical departmental customs and actions regarding similar conduct.

c.    Retrain all officers.

d.    Establish a peer review process for officers to take responsibility for the conduct of their fellow officers.

e.    Supervise the conduct of all officers to insure compliance with their training and procedures so as not to allow similar conduct as stated in this Complaint.

## COMPLIANCE WITH THE
## OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT
*[Title 51 Oklahoma Statutes § 151 et seq.]*

57.    On December 1, 2021, Notice of Governmental Tort Claim against the City of Sallisaw was prepared stating the conduct set forth in this Complaint. [1]

58.    On December 3, 2021, the Notice of Tort Claim was properly directed to

---

[1]    [51 O.S. § 156, (A)....(E).]

Dianna Davis, City Clerk, for the City of Sallisaw, Oklahoma transmitted and served by

United States Postal Service **Certified Mail # 9414 8118 876 5853 2278 20.** [2]

59.    The NOTICE of Oklahoma Governmental Tort Claim Notice filed was

within one year of the earliest allegation. [3]

60.    No response was made to the Notice of Tort Claim within ninety (90)

days, so the claim was deemed denied. [4]

61.    This Complaint is brought within 180 days of the denial of claim. [5]

## REQUEST FOR RELIEF

I.    Enter Declaratory Judgment finding that:

    A.    The Sallisaw Police Department has failed to properly train Lt. Murray, and

    B.    Has failed to properly supervise the actions and conduct of Lt. Murray.

II.    Issue a proactive  Injunction requiring Defendant, Terry Franklin or any future Chief of Police to:

    A.    Promulgate proper training procedures for all officers and to adequately supervise the conduct and actions of all Sallisaw Police Department Officers, and

    B.    To meet appropriate discipline when warranted.

III.    Award statutory, actual and compensatory damages  against all Defendants

---

[2]    [51 O.S. § 156, (C).]

[3]    [51 O.S. § 156, (B).]

[4]    [51 O.S. § 157, (A).]

[5]    [51 O.S. § 157, (B).]

for discrimination against the Plaintiff and for violations and depravation of the Plaintiffs

Civil Rights, injuries and emotional distress.

IV.    Award punitive damages for violations of all federal and state claims

against all Defendants.

V.    Award reasonable attorney's fee and costs; and

VI.    Award such other relief as the Court deems just and proper.

VII.    Plaintiff requests a jury trial as to all issues.

Dated this 12th day of May, 2022.

Respectfully Submitted,

  /s/ James A. Conrady
James A. Conrady, OBA # 1853
CONRADY LAW, PLLC
2203 South Western Road
Stillwater  OK 74074
Phone: (832) 330-5620
Email: jconrady@hotmail.com
Attorney for the Plaintiff

## VERIFICATION

STATE OF OKLAHOMA,  )
  )  ss:
COUNTY OF SEQUOYAH,  )


William Sean Buckner, of lawful age and being first duly sworn upon oath, states:

I am William Sean Buckner, Plaintiff above named.  I have read the foregoing

**COMPLAINT** and affirmatively state that all statements contained therein are true and

correct according to my best information and belief.

_____
William Sean Buckner, Plaintiff

Dated this 10th day of May, 2022.