IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

WILLIAM SEAN BUCKNER,                )
                                     )
                Plaintiff,           )
                                     )
v.                                   )      Case No. CIV-22-146-JAR
                                     )
CITY OF SALLISAW, OKLAHOMA;          )
LT. HOUSTON MURRAY, individually     )
and in his official capacity;        )
CHIEF OF POLICE TERRY FRANKLIN,      )
individually and in his official     )
capacity,                            )
                                     )
                Defendants.          )

## OPINION AND ORDER

This matter comes before the Court on Defendant Houston Murray's
Motion to Dismiss (Docket Entry #16) and Defendant City of Sallisaw's
and Terry Franklin's Motion to Dismiss (Docket Entry #17).  The parties
presented oral argument on the Motions at a hearing before the Court.

Plaintiff commenced this action in this Court on May 12, 2022.  He
alleges that he was subjected to a traffic stop by Defendant Houston
Murray, a lieutenant with the Sallisaw Oklahoma Police Department.  The
allegations in the Verified Complaint indicate that on October 23, 2021,
Plaintiff and his wife were driving on Highway 64 in Sallisaw, Oklahoma
around 6:25 p.m.  Plaintiff passed a City of Sallisaw police patrol SUV
and noted that the vehicle turned around, activated his lights, and
accelerated to drive up on Plaintiff's vehicle.  Plaintiff exited the
highway and pulled into a motel parking lot.  The police vehicle followed
and parked directly behind Plaintiff's vehicle.

Defendant Murray exited his vehicle.  Plaintiff states that he

rolled down the driver's side window. Defendant Murray identified himself and stated that the reason for the traffic stop was a burned out head lamp. Plaintiff exited his vehicle to observe the lights. Plaintiff's lights were on high beam and his wife changed them to low beam and Plaintiff alleges both lights were illuminated. He informed Defendant Murray that the light issue had been resolved. Plaintiff alleges Defendant Murray stated that he did not care and that his camera on his vehicle would prove otherwise.

Plaintiff states that he returned to his vehicle and closed the door. He asked Defendant Murray if he was going to write a citation and Defendant Murray informed him that he was going to give him a warning but because of Plaintiff's attitude, he intended to write a citation. Plaintiff states that he "argued that both headlamps were in working order and [Defendant Murray] didn't care."

Defendant Murray asked for Plaintiff's driver's license, registration, and proof of insurance. Plaintiff immediately provided his license and registration but did not have a paper copy of his insurance verification and sought to access a digital copy. Plaintiff alleges Defendant Murray took Plaintiff's license and registration to his vehicle and returned with a completed citation for a lack of proof of insurance and defective headlamps. Plaintiff states that he tried to show Defendant Murray the digital insurance verification but he stated it was too late.

As Defendant Murray presented the citation to Plaintiff, another

nearby vehicle made a loud noise, making it difficult for Plaintiff to hear Defendant Murray. After the noise subsided, Defendant Murray asked "are you going to sign this citation?" Plaintiff answered "No", but states he was going to say "No, before I read it." He then states he told Defendant Murray three times that he would sign the citation. Nevertheless, Plaintiff alleges Defendant Murray backed from Plaintiff's window, placed his hand on his gun, and ordered Plaintiff to exit his vehicle because he was placing him under arrest.

Plaintiff again allegedly offered to sign the citation but Defendant Murray told him it was too late and he was going to jail. Plaintiff was handcuffed and contends the cuffs were "extremely tight" which cause him pain. Defendant Murray responded by telling Plaintiff to "stop resisting." Defendant Murray told Plaintiff and his wife that he was impounding the vehicle parked on the motel's property. Plaintiff asked that the vehicle not be impounded because it would force his wife to walk home some four miles away, offering instead for his wife to drive the vehicle home. Plaintiff alleges Defendant Murray stated that he didn't care and was going to impound Plaintiff's vehicle. Defendant Murray placed Plaintiff in the backseat of his vehicle. Plaintiff alleges that Defendant Murray placed handcuffs on his wrist "so tight that it pealed skin off forcing me to flinch so he could yell Stop resisting arrest and place a charge of resisting arrest, which is documented with photographs at the jail intake. . . ."

Defendant Murray transported Plaintiff to the police department.

During the trip, Plaintiff alleges that he demanded that Defendant Murray charge him with every violation that he threatened and impound his vehicle and force his wife to walk home.  Plaintiff was booked into the jail and posted bond.

During the course of the encounter, Plaintiff alleges Defendant Murray "asked if I was Native American, which is highly offence (sic) to me as I belong to the Cherokee Nation, in which he had my driver's license, he ran my Cherokee License plates in his computer, and confirmed the vehicle was registered to me, with Cherokee Tags.  I understood this to be a highly offense (sic) remark and that his actions was (sic) based on the fact that I belong to the Cherokee Tribe."  Plaintiff states that, after his arrest, he has not received a traffic citation or notice to appear in any court.

Plaintiff also alleges that Defendant Murray has a history of similar conduct and mistreatment of citizens and has failed to follow the policies and procedures of the Sallisaw Police Department. Plaintiff identifies a "John Doe" who was harassed by Defendant Murray and "to protect him from retaliation."  He also alleges Defendant Murray has been the subject of internal investigations by the Sallisaw Police Department.

Plaintiff alleges Defendant Terry Franklin, the Sallisaw Police Chief, has not adequately trained or supervised Defendant Murray.  He also states that Defendant Murray has been permitted to continue in his job despite multiple complaints and instances of misconduct.

4

Plaintiff alleges three causes of action against the Defendants:

(1)     Discrimination against a Native American in violation of 42
        U.S.C. § 1981.   Plaintiff asserts disparate treatment by
        Defendant Murray because of his status as a member of the
        Cherokee Nation and because he had a tag issued by the
        Cherokee Nation;

(2)     Deprivation of civil rights in violation of his Fourteenth
        Amendment rights as enforced through 42 U.S.C. § 1983.
        Plaintiff contends Defendant Murray was acting under color of
        law when he violated Plaintiff's civil rights in respect to
        a lack probable cause, unlawful detention, false arrest
        without legal authority, use of excessive force, and injury
        to his person.

(3)     Failure to train and supervise in violation of 42 U.S.C. §
        1983.   Plaintiff alleges Defendant Franklin and the Sallisaw
        Police Department did not have adequate training in place and
        did not adequately supervise Defendant Murray.   To that end,
        Plaintiff seeks for the Court to impose a "proactive
        Injunction" upon Defendant Franklin and the Sallisaw Police
        Department requiring and precluding certain conduct outlined
        in the Complaint.

As an initial matter, Defendants request that this Court take
judicial notice of the dash camera video and body camera video from
Defendant Murray's patrol unit and his person for purposes of considering

5

these motions to dismiss.   Needless to say, Defendants dispute Plaintiff's recitation of the facts arising from the incident between Defendant Murray and Plaintiff and his wife as stated in the Complaint and provide flash drives containing the referenced videos.   This Court, however, does not find that the videos are the type of exhibits which are typically considered in connection with a Rule 12(b)(6) motion to dismiss.   Consideration of evidence which is outside of the pleadings without converting the dismissal motion to one for summary judgment is error.   Lowe v. Town of Fairland, Okla., 143 F.3d 1378, 1381 (10th Cir. 1998)(". . . courts have broad discretion in determining whether or not to accept materials beyond the pleadings. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (1990).   Reversible error may occur, however, if the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment.").   Other courts considering similar requests have also declined to consider such videos at the motion to dismiss stage, finding it more appropriately addressed in a request for summary judgment. *See* Estate of Holmes by & through Couser v. Somers, 387 F. Supp. 3d 1233 (D. Kan. 2019), *aff'd sub nom.* Couser v. Gay, 959 F.3d 1018 (10th Cir. 2020).   The sole exception found occurred where the plaintiff incorporated the body camera video in the allegations of the Complaint and did not dispute the video's authenticity, a circumstance not present in this case. *See* Harris v. Romero, 2021 WL 1169985, at *8 (D. Colo. Mar. 29, 2021), *appeal dismissed,* (10th Cir. June 3, 2022).

6

Therefore, Defendants' motions will be considered without regard to the video evidence.

## Section 1981 Claim for Racial Discrimination

Plaintiff asserts a claim under a claim under 42 U.S.C. § 1981, alleging Defendant Murray engaged in discrimination based upon Plaintiff's citizenship in the Cherokee Nation and his status as a Native American. Plaintiff states that he was subjected to "disparate treatment" because he had a vehicle tag issued by the Cherokee Nation and due to his tribal membership. In order to prevail on a claim under § 1981, a plaintiff must demonstrate: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." Barfield v. Com. Bank, N.A., 484 F.3d 1276, 1278 (10th Cir. 2007) quoting Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1102 (10th Cir. 2001). The activities which are protected under § 1981 are expressly stated as follows:

### § 1981. Equal rights under the law

(a)   Statement of equal rights

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

7

**(b)   "Make and enforce contracts" defined**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c)   Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C.A. § 1981.

Plaintiff's § 1981 claim suffers from two deficiencies on the face of the Complaint – (1) the traffic stop involved in this case does not entail the type of protected activity set out in § 1981; and (2) no intentional racial discrimination has been stated in the Complaint.  A review of the allegations as made by Plaintiff does not involve the making or enforcement of contracts or any of the other activities provided by § 1981.  As a result, the claim cannot be maintained.

Further, even if the type of racial discrimination contemplated by § 1981 could on some level be gleaned from the Complaint, the allegations do not give rise to intentional discrimination.  Plaintiff complains that Murray asked if he was Native American.  The Supreme Court's decision in McGirt v. Oklahoma, 207 L. Ed. 2d 985, 140 S. Ct. 2452 (2020) determined that the reservations of the Muscogee (Creek) Nation had not be disestablished and that the state courts had no jurisdiction over the Muscogee Nation's citizens on reservation land to prosecute crimes under the Major Crimes Act.  Since the McGirt decision and its progeny, this

Court takes judicial notice from its own dockets it has become necessary for law enforcement to ascertain if the suspect that they are detaining are citizens of Native American nations in order to determine whether the appropriate venue for prosecution is state, federal, or tribal courts.  The various Indian Nations in Oklahoma do not issue their own driver's licenses as other states within the United States.  Therefore, the Native American citizenship of a particular individual is not readily ascertainable in a traffic stop, for instance, without questioning.  No racially discriminatory intent can reasonably be derived from the mere question of tribal citizenship.  Plaintiff may have considered the remark offensive, but it was not constitutionally violative.  As a result, Plaintiff's § 1981 claim will be dismissed.

### Section 1983 Claims

A traffic stop such as the one involved in this case is a seizure which implicates the Fourth Amendment protecting citizens against unreasonable searches and seizures.  United States v. White, 584 F.3d 935, 944-45 (10th Cir. 2009).  The initial stop is appropriate if the officer observes a violation of a traffic ordinance.  United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995).  Plaintiff appears to believe from his Complaint that he was stopped for either not having his lights turned on at a particular time of day or having his lights turned on at a particular time of day.  Murray apparently pulled Plaintiff over for having a headlight out.  It would appear from the report attached to the Motion that the basis for the stop was the inoperable headlight.

9

Therefore, the stop appears to be justified.  Because this Court is not considering the evidence extraneous to the Complaint at this time, the basis for the arrest will be subject to discovery and may be more appropriately addressed by summary judgment.  Similarly, the circumstances surrounding the force used during the course of the arrest will be subject to further discovery to determine whether it was excessive under the circumstances.

### State Law Claims

Defendants point out that Plaintiff references state law claims over which supplemental jurisdiction will be exercised.  This Court agrees that no state law claims are identified in the Complaint.

### Official Capacity Claim Against Murray and Franklin

Murray and Franklin challenge Plaintiff's assertion of an official capacity claim against him as duplicative of the claim asserted against the City of Sallisaw.  An official capacity claim is treated as a suit against the municipality.  McDonald v. Wise, 769 F.3d 1202, 1214-15 (10th Cir. 2014).  Since this is the case, the official capacity claims against Murray and Franklin will be dismissed.

### Municipal Liability Claim Against City of Sallisaw

The City of Sallisaw asserts that Plaintiff has failed to identify a plausible claim against it because he has not identified a constitutionally violative policy and his failure to train claim lacks sufficient factual support.  The City seeks dismissal of the claims against it under Fed. R. Civ. P. 12(b)(6), alleging the claims fail to

meet the plausibility standard enunciated in United States Supreme Court cases of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Clearly, Bell Atlantic changed the legal analysis applicable to dismissal motions filed under Fed. R. Civ. P. 12(b)(6), creating a "refined standard" on such motions. Khalik v. United Airlines, 671 F.3d 1188, 1191 (10th Cir. 2012)(citation omitted). Bell Atlantic stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) quoting Bell Atlantic, 550 U.S. at 570. The Supreme Court did not parse words when it stated in relation to the previous standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Bell Atlantic, 550 U.S. at 546.

The Tenth Circuit has interpreted the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). The Bell Atlantic case, however, did not intend the end of the more lenient pleading requirements of Fed. R. Civ.

P. 8(a)(2).  <u>Khalik</u>, 671 F.3d at 1191.  Rather, in <u>Khalik</u>, the Tenth Circuit recognized the United States Supreme Court's continued endorsement of Rule 8's "short and plain statement" requirement in the case of <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) wherein the Supreme Court found "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Id</u>. at 93.

While the claim is admittedly tenuous on the facts alleged, this Court will not require Plaintiff to amend the Complaint with additional factual details.  The claim as plead provides sufficient notice to the City of the failure to train claim against it at this time.

### Qualified Immunity of Murray

Murray contends he is entitled to qualified immunity.  "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.". . . The Court evaluates "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established."  <u>Keith v. Koerner</u>, 707 F.3d 1185, 1188 (10th Cir. 2013).  At least insofar as an excessive force claim is alleged, both of these elements are met.  Qualified immunity will be denied at this time until further facts surrounding the force employed is developed.

### Declaratory and Injunctive Relief

Plaintiff has failed to set forth a sufficient basis for

12

declaratory or injunctive relief in the Complaint and does not justify the inclusion of such relief in his response to the Motions.  These assertions for relief will be dismissed.

### Punitive Damages Against the City of Sallisaw

Plaintiff concedes that punitive damages cannot be recovered from the City of Sallisaw.  This avenue of damages will be dismissed.

IT IS THEREFORE ORDERED that Defendant Houston Murray's Motion to Dismiss (Docket Entry #16) is hereby **GRANTED**, in part, in that the § 1981 claim, §1983 official capacity claim, and any asserted state law claims are hereby **DISMISSED**.  The remainder of the Motion is hereby **DENIED**.

IT IS FURTHER ORDERED that Defendant City of Sallisaw's and Terry Franklin's Motion to Dismiss (Docket Entry #17) is hereby **GRANTED**, in part, in that the §1983 official capacity claim against Franklin, any asserted state law claims, any declaratory or injunctive relief, and the claim for punitive damages are hereby **DISMISSED**.  The remainder of the Motion is hereby **DENIED**.

IT IS SO ORDERED this  31st  day of March, 2023.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE