**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WILLIAM SEAN BUCKNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-146-JAR |
| ) | |
| CITY OF SALLISAW, OKLAHOMA; ) | |
| LT. HOUSTON MURRAY, ) | |
| individually; and ) | |
| CHIEF OF POLICE TERRY FRANKLIN, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant Houston Murray's Motion for Summary Judgment (Docket Entry #66) and Defendant City of Sallisaw's and Terry Franklin's Motion for Summary Judgment (Docket Entry #67). The parties consented to the jurisdiction of a United States Magistrate Judge on July 20, 2022.

**Statement of Uncontroverted Facts**

On October 23, 2021, Defendant Lieutenant Houston Murray ("Murray"), a law enforcement officer with Defendant City of Sallisaw (the "City"), was on patrol when he observed a pickup truck travelling in the opposite direction on Highway 64 with one headlight illuminated. Specifically, the headlight on the driver's side of the truck was visibly unlit. DashCam Video, Docket Entry Nos. 66 and 67, Exh. No. B at 00:32.[1]

---

[1] The entirety of the traffic encounter between Buckner and Murray is captured on the dash camera of Murray's patrol unit and his body camera. *See*, Exhibit No. B (DashCam Video) and Exhibit No. C (BodyCam Video) appended to both Motions for Summary Judgment, Docket Entry Nos. 66 and 67. The time references set forth after each material fact pertains to these video exhibits.

Murray activated his overhead lights on his patrol unit, made a u-turn in the street and pursued the truck. DashCam Video at 00:37-00:43. The truck promptly pulled over into a motel parking lot and stopped. DashCam Video at 01:09.

Murray approached the truck on the driver's side. DashCam Video at 01:36. The driver, identified as Plaintiff, rolled down his window and asked, "What can I do for you?". Murray stated, "The reason I pulled you over is you have a headlight out. I need to see your license, insurance, and registration." BodyCam Video at 00:10-00:14. Plaintiff then began arguing with Murray, claiming he did not have a headlight out. BodyCam Video at 00:14-00:16. Plaintiff did not produce his license, insurance, and registration. Rather, Plaintiff got out of his truck, went to the front of his vehicle and said, "Damn", in obvious reference to the fact that the driver's side headlight was not illuminated. BodyCam Video at 00:13-00:28.

At this point in the video, Plaintiff's wife, who occupied the passenger seat of the truck, leaned over and activated the high beam on the headlights of the truck. Plaintiff then stated, "No, I don't." Id. Murray told Plaintiff's wife to return the headlights to low beam. BodyCam Video at 00:28-00:33. Plaintiff then returned to the driver's seat of the truck, stating, "Okay, I got a headlight out." BodyCam Video at 00:43-00:45.

Murray again requested that Plaintiff produce his license, insurance, and registration. BodyCam Video at 00:45. In response,

Plaintiff produced his license while still discussing the headlight with his wife. BodyCam Video at 00:47-1:00. Murray stated that the stop would have gone differently if Plaintiff would have simply agreed that he had a headlight out. BodyCam Video at 01:01-01:04. When Murray informed Plaintiff that he intended to write a citation, Plaintiff stated that he was going to "call a buddy." BodyCam Video at 01:11-01:13. He informed Murray that he was going to call Cole Hostetter, a City of Sallisaw patrol law enforcement officer. BodyCam Video at 01:14-01:15. Murray again requested Plaintiff to provide his registration and insurance. BodyCam Video at 01:16-01:17. Plaintiff insisted upon calling "Cole" and did not provide the documentation requested.

Murray asked Plaintiff if he was a member of the Cherokee Nation to which Plaintiff responded "Yes, I am. Why?" Murray responded that he would have to designate a different court on the citation. BodyCam Video at 01:19-01:26.

Murray once again requested that Plaintiff produce his registration and insurance. Plaintiff responded, "Let me call Cole." Murray responded, "Please don't. I don't have time to talk to him." BodyCam Video at 01:27-01:30. Murray then directed that the registration and insurance be produced emphatically. BodyCam Video at 01:32-01:38. Plaintiff insisted, "Let me call Cole." BodyCam Video at 01:38-01:39. Plaintiff told Murray to "chill out." BodyCam video at 01:42-01:43. Murray again directed that Plaintiff produce the required documents and told Plaintiff that he did not have time to "sit here and wait for you"

to do so. BodyCam Video at 01:44-01:48. Murray told Plaintiff that he was free "to call Cole and talk to him all day long" but only after he produced the registration and insurance. BodyCam Video at 01:49-01:53.

Plaintiff discussed Murray's behavior with his wife. Murray then asked Plaintiff why he was making the process difficult and told him he needed the documents, "so I can write my ticket and get you out of here." BodyCam Video at 02:02-02:21.

Plaintiff then produced an insurance verification form. BodyCam Video at 02:22. Murray reviewed the form but returned it to Plaintiff because it was expired and invalid. Plaintiff then handed Murray his registration. BodyCam Video at 02:33. Murray offered to allow Plaintiff an opportunity to provide an electronic proof of insurance on his cell phone. BodyCam Video at 02:39. Plaintiff and his wife then attempted to access the form. Neither, however, could produce the proof of insurance. BodyCam Video at 02:46-03:15. Plaintiff told Murray, "write a ticket for that, too." BodyCam Video at 03:05. Plaintiff and Murray then engaged in a verbal altercation over one another's attitude. Plaintiff then reiterated he was calling "Cole." BodyCam Video at 03:14-03:33.

Murray took the information back to his patrol unit, stating under his breath that Plaintiff could call "Cole", "like he makes a damn" and "he's a pissant, too." BodyCam Video at 03:29-03:40. Murray got into his patrol unit and prepared a citation for Plaintiff. BodyCam Video at 03:43-10:18.

4

Murray returned to Plaintiff's truck and handed him his registration and license. BodyCam Video at 10:31. Plaintiff stated he could not hear Murray. BodyCam Video at 10:34. Plaintiff's wife attempted to show Murray her cell phone and proof of insurance. BodyCam Video at 10:37. Murray informed Plaintiff of the date, time, and location of the court hearing on the citations. BodyCam Video at 10:43-10:52. Murray stated he was writing a ticket for the headlight and not having an insurance security form available when requested. BodyCam Video at 11:07-11:11.

Plaintiff asked Murray if he was a lieutenant, to which Murray responded he was. BodyCam Video at 11:17. Plaintiff asked how he could file a complaint against Murray. Murray told him to go and talk to Lieutenant Martins tonight. BodyCam Video at 11:18-11:28. Plaintiff accused Murray of giving him a citation of the headlight instead of a warning because he believed he was being mean to Murray. BodyCam Video at 11:36-11:42. Murray responded, "No, I was going to give you a ticket anyway, sir. It's a cruise night. Anytime I stop a car on cruise night, I give it a ticket." BodyCam Video at 11:39-11:45. Plaintiff stated, "so, you're being prejudiced against Indians?" Murray responded, "No." Plaintiff asked if Murray was Indian. Murray responded, "Yes, I am. I'm a Cherokee." BodyCam Video at 11:48-11:54. Plaintiff and his wife continued to argue with Murray about the citation. He concluded by stating, "I don't give a shit. Just give me the ticket so I can go. I got other things to do." BodyCam Video at 11:55-12:03.

5

Murray then handed Plaintiff the citation and asked him to "sign this box right here." BodyCam Video at 12:03. Plaintiff interrupted, stating, "I ain't signin' nothin'." BodyCam Video at 12:04. Murray responded by directing Plaintiff to "step out, then. Get out." BodyCam Video at 12:05-12:06. He then yelled, "Get out, now! Get out, now." Plaintiff responded by stating, "I'll sign it." Murray yelled, "No, get out, now! Get out, now!" Plaintiff repeated he would sign the ticket, while getting out of his truck. Murray stated, "No, I asked you to sign it and you said you wouldn't." He further stated, "Put your hands behind your back. You're under arrest." BodyCam Video at 12:08-12:21.

Murray put one handcuff on Plaintiff's left wrist and instructed that a wrecker be sent out to the location. BodyCam Video at 12:21-12:27. Plaintiff then resisted Murray putting the handcuff on his right wrist. BodyCam Video at 12:27-12:28. Murray instructed Plaintiff to "loosen your hand." BodyCam Video at 12:28. While Murray was attempting to put the handcuff on Plaintiff's right wrist, Plaintiff stated, "that fucking hurts." BodyCam Video at 12:30. Murray responded, "if you'd quit fighting it, they won't hurt." BodyCam Video at 12:32-12:33.

Plaintiff was eventually handcuffed and transported by Murray to the Sallisaw Police Department. He was booked into jail and released on bond.

Plaintiff did not complain further about the handcuffs causing him distress while being transported. At the jail, a photograph was taken

6

of Plaintiff's wrist. He later stated that his wrist was bruised by the handcuffs, but Plaintiff admitted that he did not seek any medical treatment for his wrist and the injury has since healed.

Defendants offered the affidavit of John Weber, the police Captain of the Patrol Division for the City of Sallisaw Police Department. Captain Weber attests that

1) Murray completed CLEET training while with the Sallisaw Police Department;

2) Murray completed Lexipol Daily Training Bulletin training provided by Lexipol, a private entity recognized by CLEET that develops policies for public safety agencies and provides training;

3) The Sallisaw Police Department maintains and enforces written policies and procedures;

4) Murray was one of the most trained police officers in the Sallisaw Police Department. He retired in August of 2022 after almost 33 years as a state certified law enforcement officer;

5) Plaintiff filed a complaint over Murray's conduct during the stop, detention, and arrest on October 23, 2021. Captain Weber investigated the allegations in the complaint and found no violations other than receiving a warning for commenting to himself on the BodyCam Video that Plaintiff and Officer Hostetter were "pissants."

6) Captain Weber also attested that the BodyCam Video demonstrates

>
> at 0:12:40-0:12:54 that Murray's actions were consistent with an officer checking the tightness between the handcuffs after their application, and the audible "click" was consistent with the noise handcuffs make when the double-lock safety mechanism is engaged to prevent the handcuffs from tightening;
>
> 7) Captain Weber found no violation of policy to warrant disciplinary action arising from the incident in question;
>
> 8) Captain Weber was unaware of any history of Murray being accused of using excessive force; and
>
> 9) Captain Weber was unaware of any history of Murray being accused of making unlawful traffic stops, unlawful detentions, or false arrests.

Murray completed CLEET training in October of 1989 and became a certified law enforcement officer in the State of Oklahoma at that time. Docket Entry No. 67 at Exh. No. I.  Murray was hired by the City of Sallisaw in June of 2001 as a police dispatcher.  He subsequently became a patrol officer in 2002.  Id. at Exh. No. J, p. 8, ll. 14-16.  Murray later earned his Intermediate and Advanced CLEET Certificates.  Id. at Exh. Nos. K and L.  He was promoted to lieutenant in the police department patrol division in 2013.  Id. at Exh. No. M.  Murray completed CLEET Field Training Officer training in 2016.  Id. at Exh. No. N.

Plaintiff commenced this action in this Court on May 12, 2022.  He alleges three causes of action against the Defendants:

> (1) Discrimination against a Native American in violation of 42

       U.S.C. § 1981. Plaintiff asserts disparate treatment by Defendant Murray because of his status as a member of the Cherokee Nation and because he had a tag issued by the Cherokee Nation;

(2) Deprivation of civil rights in violation of his Fourteenth Amendment rights as enforced through 42 U.S.C. § 1983. Plaintiff contends Defendant Murray was acting under color of law when he violated Plaintiff's civil rights in respect to a lack probable cause, unlawful detention, false arrest without legal authority, use of excessive force, and injury to his person.

(3) Failure to train and supervise in violation of 42 U.S.C. § 1983. Plaintiff alleges Defendant Franklin and the Sallisaw Police Department did not have adequate training in place and did not adequately supervise Defendant Murray. To that end, Plaintiff seeks for the Court to impose a "proactive Injunction" upon Defendant Franklin and the Sallisaw Police Department requiring and precluding certain conduct outlined in the Complaint.

As a result of the decision represented in the Opinion and Order entered March 31, 2023, the remaining claims are (a) the § 1983 claims for false arrest and excessive force against Murray; and (b) failure to train and supervise against Defendants Terry Franklin ("Franklin") and

City of Sallisaw (the "City").2

**General Standard on Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Universal Money Centers v. A.T. & T., 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has

---

2 This Court is somewhat perplexed by the pleading on this latter claim against Franklin and the City, since the relief originally requested was limited to declaratory and injunctive relief which was dismissed as lacking support. The Court is proceeding to address these claims on summary judgment by giving Plaintiff the benefit of the doubt that he also seeks monetary damages for these alleged violations.

met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Plaintiff does not oppose any of these material facts as set forth herein. Consequently, the only question remaining is whether Defendants are entitled to summary judgment as a matter of law.

## McGirt Effect on Case

This Court initially must address a curious comment made in Plaintiff's briefing in response to the summary judgment requests. Plaintiff appears to imply that either Murray acted outside of his jurisdiction during the arrest of Plaintiff or this Court lacks jurisdiction to consider this case – Plaintiff's meaning is not entirely clear. In either event, Plaintiff is misinformed. Nothing in the Supreme Court's pronouncement in McGirt v. Oklahoma, 207 L. Ed. 2d 985, 140 S. Ct. 2452 (2020) precluded Murray from writing Plaintiff a citation and arresting him. Murray recognized Plaintiff's status as a Native American within the bounds of a reservation as delineated in McGirt having asked if he was a tribal member and written the citation for an appearance in the tribal court of the Cherokee Nation. The Cherokee Nation, in turn, recognized Murray's authority by initiating a case based upon Murray's Probable Cause Affidavit. This Court would also note that

11

Plaintiff has not raised Murray's lack of jurisdiction as an issue in this action prior to responding to the summary judgment motions.

As for this Court's jurisdiction, the action is based upon a violation of a federal statute – 42 U.S.C. § 1983 – initiated by Plaintiff. This Court clearly possesses the requisite jurisdiction to consider this case.

Plaintiff concludes this portion of his response in stating, "Jurisdiction was exclusively in the District Court of the Cherokee Nation. Consequently, the recitation of facts (controverted or not) in both Motions for summary judgment are of no value." Quite honestly, this Court has no idea of the meaning or significance of this statement, beyond that which is addressed herein.

### Claim to Qualified Immunity by Murray

Murray first asserts that he is entitled to qualified immunity on the § 1983 claims for false arrest and excessive force. Generally, government employees are immune from personal liability if their conduct is reasonable in light of clearly established law and the information that the employee possessed at the time of their actions. Davis v. Scherer, 468 U.S. 183, 190 (1984); Harlow v. Fitzgerald, 457 U.S. 800, 818 n.30 (1982). The evaluation of a summary judgment motion on the issue of qualified immunity is treated somewhat differently than other summary judgment issues. Once a defendant raises a qualified immunity

defense, a plaintiff bears a heavy burden to establish that a defendant has violated clearly established law. Hannula v. City of Lakewood, 907 F.2d 129, 130-31 (10th Cir. 1990); Lutz v. Weld County School District, 784 F.2d 340, 342-43 (10th Cir. 1986). A plaintiff must "come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988). In making this determination, Plaintiff must demonstrate "that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2003)(citation omitted).

Plaintiff claims Murray falsely arrested him after he refused to sign the citation issued to him. "[A] warrantless arrest like the one at issue here is constitutional if the officer has probable cause to believe that the person arrested has committed a crime. See Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). 'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.' Id. (internal quotation marks omitted). 'When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to [qualified] immunity if a reasonable

officer could have believed that probable cause existed to arrest the plaintiff.' Id. (internal quotation marks omitted). To prove a false arrest, therefore, the plaintiff must allege that the arresting officer acted without probable cause." Howl v. Alvarado, 783 F. App'x 815, 818 (10th Cir. 2019).

The initial traffic stop was justifiable as evidenced by the DashCam Video demonstrating Plaintiff's equipment on his truck was not operating properly – his headlight on low beam was not illuminated. This condition violates Oklahoma law. Okla. Stat. tit. 47 § 12-101(A)(1)(c)("It shall be a misdemeanor, upon conviction, punishable as provided in Section 17-101 of this title, for any person: 1. To drive or move, or for the owner to cause or permit to be driven or moved on any highway, any vehicle or combination of vehicles which: * * * c. is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter."); Okla. Stat. tit. 47 § 12-203(A)("Every motor vehicle shall be equipped with at least two headlamps emitting a white light with at least one lamp on each side of the front of the motor vehicle on the same level and as far apart as practicable."). The initial stop and the issuance of the citation for the violation of these statutes was appropriate.

When presented with the citation by Murray, Plaintiff clearly refused to sign it. This is also depicted clearly in the BodyCam Video. Oklahoma law mandates the release of a person who commits a misdemeanor

traffic violation if certain conditions exist, including that the person signs a citation, evincing a promise to appear in court on the matter. Okla. Stat. tit. 22 § 1115.1A(A)(3)(" In addition to other provisions of law for posting bail, any person, whether a resident of this state or a nonresident, who is arrested by a law enforcement officer solely for a misdemeanor violation of a state traffic law or municipal traffic ordinance, shall be released by the arresting officer upon personal recognizance if: * * * 3. The arrested person acknowledges, as evidenced by the electronic signature of the person, a written promise to appear as provided for on the citation, unless the person is unconscious or injured and requires immediate medical treatment as determined by a treating physician."). Upon Plaintiff's refusal to sign the citation, Murray was authorized by law to arrest him and take him into custody. Murray acted with probable cause in arresting Plaintiff and, therefore, did not violate the clearly established law against false arrest. Murray is entitled to qualified immunity on Plaintiff's false arrest claim.

Plaintiff also asserted a claim for excessive force in response to which Murray again claims qualified immunity. The Fourth Amendment to the Constitution precludes an illegal "seizure" of a citizen through the use of excessive force. U.S.C.A. Const. Amend. IV. The question to be answered in a qualified immunity context on excessive force claims is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their

15

underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Under the totality of the circumstances approach, the court is required to consider a balance of the factors of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

In the instance of handcuffing such as in the case before this Court, "unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." Cortez v. McCauley, 478 F.3d 1108, 1129 (10th Cir. 2007). Other than Plaintiff's initial complaint that the handcuff on his left wrist "fucking hurts", he did not complain further about the tightness of the handcuffs or any injury arising from it during the ride to the Sallisaw Police Department. Further, the photograph of his wrist only indicates redness, which has been determined to be insufficient for the required element of actual injury. Id. Plaintiff never sought medical treatment for the redness or perceived "bruising." Further, Captain Weber provided the uncontroverted affidavit which indicated that he believed the handcuffs' safety locking mechanism was engaged which prevented the handcuffs from becoming too tight based upon the BodyCam Video. This Court, therefore, cannot conclude that excessive force was employed by Murray in the use

of handcuffs and he is entitled to qualified immunity on this claim as well.

In an effort to oppose summary judgment by all Defendants, Plaintiff filed a combined response which set out the following additional facts:

(1) Murray received a bad conduct discharge from the United States Navy;

(2) A Special Court Martial reduced Murray's rank and stripped him of all medals and commendations;

(3) Factual discrepancies existed in Murray's past employment and service in applications to the Sallisaw Police Department;

(4) Murray denied he was convicted of a felony;

(5) Murray was a convicted felon;

(6) Murray could not purchase, use, or possess a firearm as a convicted felon;

(7) The City was negligent by failing to conduct an adequate background check before hiring Murray; and

(8) These additional facts preclude summary judgment.

Plaintiff wholly fails to draw any connection between Murray's bad conduct discharge from the United States Navy and the actions he took in the traffic stop and subsequent arrest of Plaintiff. Simply put, the facts cited by Plaintiff are not material to the claims asserted in this action. Moreover, they are not factually correct and contain legal

conclusions that are erroneous. Murray's bad conduct discharge is not equivalent to a civilian felony – that is reserved for a dishonorable discharge. *Manual for Courts-Martial*, §1003(B) and (C). The allegations were investigated by CLEET and the discharge did not serve as a bar to Murray's certification. Docket Entry No. 78, Exh. No. D. Again, Plaintiff fails to demonstrate the materiality of these events that occurred some 32 years prior to the events of October 2021.

**Failure to Train and/or Supervise Claim Against the City and Franklin**

The City and Franklin also move for summary judgment on the failure to train and/or supervise claims asserted by Plaintiff. "For a municipality (or sheriff, in this case) to be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation." Estate of Burgaz by & through Zommer v. Bd. of Cnty. Commissioners for Jefferson Cnty. Colorado, 30 F.4th 1181, 1189-90 (10th Cir. 2022) citing Crowson v. Washington Cnty., Utah, 983 F.3d 1166, 1187 (10th Cir. 2020) ("[A] failure-to-train claim may not be maintained [against a municipality] without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer."). Because this Court has concluded that Murray did not violate Plaintiff's constitutional rights, the failure to train and failure to supervise claims against both the City and Franklin necessarily fail. These Defendants are also entitled to summary judgment.

IT IS THEREFORE ORDERED that Defendant Houston Murray's Motion for Summary Judgment (Docket Entry #66) is hereby **GRANTED**. Murray is

entitled to qualified immunity for the reasons stated herein.

IT IS FURTHER ORDERED that Defendant City of Sallisaw's and Terry Franklin's Motion for Summary Judgment (Docket Entry #67) is hereby **GRANTED**.

IT IS FURTHER ORDERED that the Pretrial Conference currently set for April 30, 2024 and the jury trial of this case set for May 13, 2024 are hereby **STRICKEN**.

IT IS SO ORDERED this 29th day of April, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE